UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 16-cr-1408-WQH |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| ROBERT HOLCOMB, | |
| Defendant. | |

HAYES, Judge,

The matter before the Court is the Motion to Delete Fine and Motion for Early Termination of Supervised Release, filed by Defendant Robert Holcomb. (ECF No. 276.)

## BACKGROUND

On July 20, 2018, Holcomb was convicted by a jury on four counts of making a false statement to a financial institution in violation of 18 U.S.C. § 1014. (ECF No. 173.) On the same date, the Court declared a mistrial as to the charges in ten other counts of the Indictment—i.e., five counts of aiding and assisting in the preparation of false returns, in violation of 26 U.S.C. § 7206(2), and five counts of wire fraud, in violation of 18 U.S.C. § 1343. A retrial as to those ten counts was scheduled to begin on September 18, 2018.

On August 29, 2018, the parties filed a Sentencing Agreement and Appeal Waiver, wherein the Plaintiff United States agreed to move to dismiss the remaining counts against Holcomb (among other things) in exchange for Holcomb agreeing to "waive[], to the full

extent of the law, any right to appeal or to collaterally attack the Defendant's sentence." (ECF No. 180 at 3.)

On September 24, 2018, U.S. Probation filed a Presentence Investigation Report ("PSR"), which described the offense conduct as follows:

> In 2012, the IRS received a civil whistleblower complaint and in 2013, the IRS and Federal Bureau of Investigation (FBI) began an investigation into HOLCOMB who resided and operated a business at 1744 Mulberry Drive in San Marcos, California. The investigation revealed that HOLCOMB maintained a large number of fraudulent trust accounts, which he marketed to clients as a means to reduce their tax liability.
>
> To effectuate his tax-evasion scheme, HOLCOMB accepted income from his clients, laundered it through various bank accounts, and then returned it, minus a 6% to 11% fee. Afterwards, HOLCOMB assured his clients that they no longer owed any income taxes on the laundered funds.
>
> Beginning in approximately 1999, and continuing through at least 2015, HOLCOMB opened dozens of bank accounts at more than 20 different banks and credit unions around the country. In 2011, the IRS initiated a civil audit of HOLCOMB. Thereafter, he closed most of his old accounts, but opened a series of new accounts at multiple banks. For many of these accounts, he provided a name that resembled a charity and then misappropriated the taxpayer identification number (EIN) from a legitimate charity with a similar name. Between approximately 2010 and 2015, HOLCOMB had transferred more than $12 million of his clients' unreported income through his accounts, resulting in an estimated tax loss of at least $3 million.

(ECF No. 182 ¶¶ 6–8.) The PSR stated that Holcomb "used his personal residence's address as a business address to incorporate" corporations, including "Brother's Keeper Ministries." *Id*. ¶ 51. Holcomb "admitted he was the Chief Financial Officer and sole signer of a Bank of America account in the name of Brother's Keeper," and "[h]e admitted the sole purpose of the account was to receive distributions from the people and businesses we worked with." *Id*. ¶ 56.a. The PSR stated that "HOLCOMB admitted he had not paid taxes in 32 years." *Id*. ¶ 148. The PSR stated: "[D]uring the execution of the search warrant, HOLCOMB advised investigating agents that he was the Chief Financial Officer of

Brother's Keeper and utilized a bank account to receive distributions from the people and businesses we worked with. In this capacity, which he has done since the 1990's, HOLCOMB earned hundreds of thousands of dollars." *Id*. ¶ 149. The PSR stated that, from 1985 to 1995, Holcomb "owned a construction company," and "he built shopping centers and high-end apartment complexes." *Id*. ¶ 150. According to the PSR, Holcomb acted as the President or contact person for 26 corporations or other entities between 2014 and 2018. The PSR stated that "HOLCOMB and Kathleen Holcomb (his ex-wife) own the residence at 1744 Mulberry Drive, in San Marcos. They purchased the home on July 11, 2000 and took out a conventional loan for $299,950." *Id*. ¶ 152. The PSR continued:

> HOLCOMB advised he does not receive any income and has been retired since 1995. He related that a trust, the name of which he declined to provide, pays his monthly expenses (outlined below). Further he refused to provide any documentation or verbal information as to the status of the trust, or what is contained therein.
>
> The defendant has retained counsel in this case, though the details of the arrangement are unknown. Accurint records reflect the defendant's home is in his personal name along with his ex-wife and is valued at almost $850,000. He also owns one vehicle and reported no liabilities or assets in his name. The defendant has been earning his income from fraudulent activity since the 1990's and according to the case agent, had earned at least $325,000 during the last couple of years from his illegal activities. Disposition of where these proceeds went are unknown.

*Id*. ¶¶ 155–56. The PSR listed Holcomb's residence as 1744 Mulberry Drive, San Marcos, CA 92069, worth $843,683.00 and "Owned by Stonegate Investment Trust." *Id*. ¶ 157. The PSR listed Holcomb's "liabilities" as a "Mortgage (Owned by Stonegate Investment Trust)" in the amount of $175,000 as to 1744 Mulberry Drive, San Marcos, CA 92069. *Id*.

On February 22, 2019, the Court sentenced Holcomb to 46 months' custody, followed by five years of supervised release. (ECF No. 219.) The Court also ordered Holcomb to pay a total fine of $600,000, at a rate of $1000 per month upon his release from custody. *Id*. at 5.

On March 8, 2021, the Court issued a bench warrant pursuant to a Petition issued by U.S. Probation alleging that Holcomb "refused to disclose his personal and business financial records to the probation officer," failed to make monthly fine payments, and failed to work regularly at a lawful occupation. (ECF No. 235 at 1.)

On October 7, 2021, the Court conducted a contested evidentiary hearing as to the March 8, 2021 Petition. (*See* ECF No. 261.)

After receiving briefing from the parties, on December 2, 2021, the Court found by a preponderance of the evidence that Holcomb "violated Special Condition Number 3 of the judgment that he provide complete disclosure of personal, business financial records to the probation officer as requested," and Holcomb "willfully failed to make all reasonable efforts to pay his fine and has provided no information to show that he has no ability to continue paying his fine." (ECF No. 267 at 6, 7.) At the sentencing hearing, Holcomb told the Court that "the church that I had been a part of allowed me to stay in its property." *Id*. at 13. After hearing from the parties, the Court revoked supervised release, sentenced Holcomb to nine months of custody followed by 51 months of supervised release. *Id*. at 25. The Court stated:

> This is the rare case where someone had the ability to pay the fine first for a few months and then elected not to. And, you know, certainly the inference is drawn is that they could pay, elected not to. Maybe there was a change in the financial circumstances where they couldn't pay, but we have no idea what that is. And, you know, to the extent that the defendant claims he has no assets, that is not sufficient. You can't claim you don't have any assets. There is a process, and he has just absolutely refused to participate in the process.

*Id*. at 19–20. The Court stated: "There was a $600,000 fine imposed. You are required to pay it." *Id*. at 23.

On June 2, 2023, the parties filed a joint motion requesting that the Court "modify Defendant's payment schedule to $750.00 per month beginning in June 2023 and require Defendant to pay the fine in accordance with the payment schedule as a condition of supervised release." (ECF No. 274 at 5.) In the joint motion, Holcomb asserted that "the

San Marcos property where Defendant resides is owned by Stonegate Investment Trust … with all interest held by Brother's Keeper Ministries ('BKM')"; "Defendant is a trustee of BKM"; and "BKM allows Defendant to reside at the San Marcos property and pays for Defendant's living expenses in exchange for Defendant's work in reviewing documents and records for BKM and maintaining and renovating the San Marcos property." *Id*. at 3.

On June 5, 2023, the Court granted the joint motion, stating that "pursuant to 18 U.S.C. § 3572(d)(3), that Defendant shall pay the fine at the rate of $750.00 per month, beginning June 2023 and extending after the term of supervised release if the fine has not been paid in full," and "as an added condition of supervised release, Defendant shall pay the fine in accordance with the above payment schedule." (ECF No. 275 at 1.)

On September 13, 2024, Holcomb filed the pending Motion to Delete Fine and Motion for Early Termination of Supervised Release. (ECF No. 276.) Holcomb contends:

> At sentencing, the Court imposed a $600,000 fine, based on real property worth $600,000 the PSR attributed to Mr. Holcomb. Recently, however, the California courts determined that property does not belong to Mr. Holcomb. Because he does not have other assets or income supporting a fine, he asks the Court to delete the fine. Alternatively, he asks the Court to terminate his monthly payments.
>
> Mr. Holcomb also requests early termination of supervised release. He commenced a five-year term of supervised release in August, 2020. After an initial violation, the Court reimposed 51 months of supervised release, and Mr. Holcomb has now served more than 32 of those 51 months without violation. He has kept out of trouble, continued to work for Brothers Keepers Ministries, and remained law abiding.

*Id*. at 1. Attached to the motion is a "Verified Petition to Determine Beneficial Title to Property," filed on February 28, 2023 ("Verified Petition"). *Id*. at 10. The Verified Petition was filed by Holcomb and signed by Holcomb. Holcomb asserted in the Verified Petition that Brother's Keepers Ministries is the beneficiary of Stonegate Investments trust and has been the beneficial owner of Holcomb's San Marcos residence since Holcomb purchased the property 2000. *Id*. at 10–11. Holcomb asserted that he purchased the property in his

5

16-cr-1408-WQH

own name because "the commercial lender … would only agree[] to make the loan to [Holcomb] in his individual capacity." *Id*. at 11. Holcomb asserted that "Service of Summons" for the state court Verified Petition "is waived as this petition is not a 'contested matter.'" *Id*. at 12. On February 7, 2024, the state court issued a minute order granting Holcomb's Verified Petition. *Id*. at 7.

On October 2, 2024, Plaintiff United States filed an opposition to the Motion to Delete Fine and Motion for Early Termination of Supervised Release. (ECF No. 278.) Plaintiff contends that Holcomb "waived his ability to collaterally attack his sentence," and no statute or rules "allow a district court to reduce the amount of a fine after final judgment has entered." *Id*. at 3. Plaintiff contends that "Holcomb has long maintained a series of shell corporations and trusts, and there is no reason to think has now lost control over his property," and "[t]his Court properly imposed a $600,000 fine at the time of sentencing, and it should not eliminate that fine based on Holcomb's continued claims regarding ownership of his residence." *Id*. at 4. Plaintiff also contends that the Court should not terminate supervise release because "Holcomb continues to refuse to provide a 'complete disclosure of personal and business and financial records' as required by the conditions, and he has apparently failed to work regularly or seek employment." *Id*. Plaintiff finally asserts that Holcomb's probation officer opposes early termination of supervision and deletion of the fine. *Id*. at 5.

On January 7, 2025, Holcomb filed a reply brief in support of his Motion to Delete Fine and Motion for Early Termination of Supervised Release. (ECF No. 279.)

**RULING OF THE COURT**

**I.  Motion to Delete Fine**

Holcomb requests that the Court "vacate or stay the fine." (ECF No. 276 at 4.)

In *United States v. Morales*, 328 F.3d 1202 (9th Cir. 2003), the Court of Appeals addressed the issue of whether a district court has the authority to grant a defendant's motion to vacate a fine or reduce a defendant's payments on a fine. The Court of Appeals analyzed Federal Rule of Criminal Procedure 35(a), 18 U.S.C. § 3614, 18 U.S.C. § 3583,

18 U.S.C. § 3573, and the inherent supervisory powers of the district court, and held that none of these sources of authority conferred jurisdiction on the district court to modify or vacate the defendant's fine imposed as part of his criminal sentence. *See Morales*, 328 F.3d at 1204–05.

In his motion, Holcomb fails to state any legal authority for his request to vacate or stay the fine. While 18 U.S.C. § 3573(2) states that, "[u]pon petition of the Government showing that reasonable efforts to collect a fine or assessment are not likely to be effective," a court "may, in the interest of justice ... defer payment of the fine," the Government has not petitioned for deferral of Holcomb's fine. While 18 U.S.C. § 3614 states that a court may "resentence the defendant to any sentence which might originally have been imposed" if the defendant "knowingly fails to pay a delinquent fine," Holcomb has not stated that he has knowingly failed to pay a delinquent fine and has not requested a resentencing.

Even if Holcomb had made a showing that the Court had the legal authority to vacate or stay the fine, the Court would not exercise its discretion to do so based on the current record. As outlined above, the Court was aware at sentencing that Holcomb's residence was owned by Stonegate Investment Trust and that Holcomb had a close relationship with Brother's Keepers Ministries. In particular, the PSR states that Holcomb used his personal residence as a business address to incorporate Brother's Keeper Ministries; Holcomb acted as the Chief Financial Officer of Brother's Keeper Ministries and "sole signer" of a Bank of America account in the name of Brother's Keeper; and Holcomb admitted that the "sole purpose" of the Brother's Keeper bank account "was to receive distributions from the people and businesses we worked with." (ECF No. 182 ¶ 56.a.) When the Court imposed a modified payment schedule in June 2023, the parties asserted that Holcomb's residence was "owned by Stonegate Investment Trust … with all interest held by Brother's Keeper Ministries." (ECF No. 274 at 3.) The only new information contained in Holcomb's pending motion is that Holcomb petitioned a state court in February 2023—apparently without providing notice to anyone—and ultimately received an order from the state court that "the owner of … [Holcomb's residence] is the Beneficiary of [Stonegate Investment

Trust]." (ECF No. 276 at 7.) The Court does not find this new information materially alters the record supporting the imposition of the fine. As shown at trial and in the PSR, Holcomb earned "hundreds of thousands of dollars" assisting others in defrauding millions of dollars of tax revenue from the Internal Revenue Service. (ECF No. 182 ¶¶ 149.) Additionally, as stated in the PSR, Holcomb paid no taxes since 1986 despite owning a construction company from 1985 to 1995 that "built shopping centers and high-end apartment complexes," and subsequently serving as the president of three corporations. *Id*. ¶¶ 150–51. The Court previously found that Holcomb failed to provide complete disclosure of personal, business financial records to the probation officer as requested (*see* ECF No. 267 at 6), and there is nothing in the record to indicate that Holcomb has since provided complete disclosure to U.S. Probation.

Holcomb alternatively requests that the Court "reduce the payment schedule to zero or a nominal amount" pursuant to 18 U.S.C. § 3572(d)(3). (ECF No. 276 at 4; *see also* ECF No. 279 at 2–3.) Section 3572(d)(3) states: "A judgment for a fine which permits payments in installments shall include a requirement that the defendant will notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine. Upon receipt of such notice the court may, on its own motion or the motion of any party, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." The Court does not find the state court order to constitute a material change in Holcomb's economic circumstances. In June 2023, the Court granted the parties' joint motion to modify Holcomb's payment schedule to $750.00 per month based in part on the parties' assertion that "the San Marcos property where Defendant resides is owned by Stonegate Investment Trust … with all interest held by Brother's Keeper Ministries ('BKM')." (ECF No. 274 at 3.) The subsequent state court order does not indicate anything new about Holcomb's economic circumstances. Moreover, even if the Court had discretion to adjust the payment schedule pursuant to §3572(d)(3), for the reasons discussed above the Court would decline to do so based on the current record.

For these reasons, the motion to vacate or stay the fine or reduce the payment schedule is denied.

## II. Motion for Early Termination of Supervised Release

After considering the relevant factors under 18 U.S.C. 3553(a), a court may terminate a defendant's term of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). A defendant has the burden of demonstrating that early termination of supervised release is warranted. *See United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006).

Holcomb asserts that, since his release from custody for violating the terms of supervised release, he "has been supervised more than two and a half years without another violation," and "has followed the law, kept out of trouble, and maintained compliance with his conditions of release." (ECF No. 276 at 3, 5.) The Government disputes this assertion, stating that, "[a]fter Holcomb was released from custody, he still failed to make his full $1000 payments, resulting in the parties' joint motion on June 2, 2023, to lower his month payments," and "Holcomb continues to refuse to provide a 'complete disclosure of personal and business and financial records' as required by the conditions, and he has apparently failed to work regularly or seek employment." (ECF No. 278 at 4.) Even if Holcomb's assertion is correct, the Court would find that Holcomb's recent compliance with the terms of supervision—although commendable—would be insufficient to warrant early termination of supervised release. Moreover, based upon the current record, there is no indication that Holcomb has provided complete disclosure of his personal, business financial records to U.S. Probation as required (*see* ECF No. 219 at 4) and there is no record of Holcomb's efforts to locate gainful employment as required (*see id*. at 3). The Court finds that the previously ordered term of supervised release is sufficient, but not greater than necessary, in light of "the nature and circumstances of the offense and the history and characteristics of the defendant," and the need for the sentence "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the

defendant," and "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(6). The Court finds that Holcomb has failed to show that early termination of supervised release is warranted by Holcomb's conduct and/or the interest of justice. *See* 18 U.S.C. § 3583(e)(1).

## CONCLUSION

IT IS HEREBY ORDERED that Motion to Delete Fine and Motion for Early Termination of Supervised Release is denied. (ECF No. 276.)

Dated: January 13, 2025

*[signature]*
Hon. William Q. Hayes
United States District Court